UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Regina Kahles, et al,                    :    Case No. 1:13-cv-560
                                         :
         Plaintiffs,                     :
                                         :
vs.                                      :
                                         :
City of Cincinnati, et al,               :
                                         :
         Defendants.                     :

## ORDER

Before the Court are cross-motions for summary judgment filed by all Plaintiffs

(Doc. 48), and by the Defendants (Doc. 50).  Plaintiffs allege a variety of claims arising

from the Cincinnati Retirement System's decision to discontinue their disability

retirement allowance, which was previously granted to each of them.  The claims

alleged by Plaintiffs in the two consolidated lawsuits differ somewhat; but all of the

Plaintiffs allege that the decision to terminate their benefits violated their federal

procedural and substantive due process rights.  They also allege that Defendants'

decision to terminate their benefits under a section of the City Code, amended in 2013

to redefine continued eligibility for disability benefits, amounted to an unconstitutional

retroactive application of a statute.

## FACTUAL BACKGROUND

Each of the Plaintiffs formerly worked for the City of Cincinnati in some capacity,

and was eligible to participate in the City's retirement plan.  The plan is administered by

the Board of Trustees of the Cincinnati Retirement System ("CRS").  Since 1960, the

CRS has included a provision for a "disability retirement allowance" for qualified

participants.  (Doc. 7, Ex. B, Ordinance #315-1960.)  That ordinance stated that an employee who became disabled may be retired, if the CRS Medical Director certified that the member cannot perform his or her duty, and the incapacity is likely to be permanent.  That provision has been amended by ordinance several times over the years, and its current form is contained in City Code Section 203-41.  When each of the Plaintiffs was initially granted a disability allowance, the Code stated that an employee with at least five years of service shall be retired with a disability allowance, "provided the (CRS) medical director after a medical examination of such member shall certify that such member is mentally or physically incapacitated for the further performance of duty, and such incapacity is likely to be permanent, and such member should be retired ...".  If the medical director's findings are disputed, the Board may employ two additional disinterested physicians to examine the member and report their findings to the Board.

In 1962, the City adopted Ordinance 166-1962, which required disabled beneficiaries to annually report all compensation they earned while receiving a disability allowance.  If those earnings, plus the disability allowance, exceeded the compensation he or she would have earned if still employed, the allowance was correspondingly reduced.  The ordinance also required disabled beneficiaries under the age of 60 to undergo an annual medical examination by the CRS Medical Director.  After the examination, if the director certified that the employee was "able to engage in a gainful occupation paying not less than the prevailing compensation for the employment classification held by such disability beneficiary at the time of his retirement, and should the board concur in such report, then such beneficiary's retirement allowance shall cease."  That recertification provision was codified in Section 203-55 of the Code.

In 2012, the Board hired a consultant to review the disability program and advise CRS of changes that could be made "to ensure the program is consistent with prevalent best-practice standards and supports the plan's financial stability and integrity." (Doc. 40, Ex. A, CRS Benefits Committee Minutes of August 23, 2012.) The consultant recommended (among other things) that CRS consider a clarification to the Code's definition of disability, and "enhance the rigor around the recertification of disability." (Id.) These discussions eventually led to an amended Section 203-55, effective in April 2013 and entitled "Reexamination of Disability Beneficiaries; Restoration to Service." As relevant here the amended section states: "Should the medical director or such competent physician designated by the board recommend to the board that a **disability beneficiary is able to engage in a gainful occupation**, and should the board concur with the recommendation, then such beneficiary's disability retirement allowance shall cease." (Doc. 45-2, Hoyga Deposition Ex. 3 at PAGEID 593; emphasis added) In other words, if a disabled beneficiary could do any gainful work regardless of his or her prior employment classification and salary, benefits would cease.

Prior to 2012, the Board did not conduct regular "audits" (recertification after medical exam) as provided in Section 203-55. Paula Tilsley, the CRS Pension Fund Manager, states in her declaration that the Board started two audits in 2009, but they were never finalized. In 2012, 16 audits were completed; in 2013, there were 20, and in 2014, there were 2 completed audits. Plaintiffs were each subjected to an audit, and were notified that they were required to submit to a medical examination by Dr. Paul Hogya, the CRS Medical Director. Each Plaintiff was instructed to have their personal

medical providers send their records directly to Dr. Hogya. Based on his examination and review of each Plaintiff's records, Dr. Hogya wrote an opinion letter to the Board, concluding that each Plaintiff had "the capacity to work," and recommending that the disability allowance be terminated. The Board's Benefits Committee reviewed each of Dr. Hogya's recommendations, and reported to the Board that in each case, it agreed with his recommendation. The Board voted to accept those recommendations, and a letter was sent to each of the Plaintiffs informing them of that decision. See, e.g., Doc. 45-2, Exhibit G, letter to Robert Rechel dated June 6, 2013 (CM/ECF PAGEID 595).

The letter also informed each Plaintiff of the procedure to appeal the decision. Rule XI of the Rules of the CRS Board of Trustees, effective July 2010, governs disability appeals. After the member is notified of the Board's decision, the member may file a notice of intent to provide additional medical evidence within thirty days of the notice of termination. "Additional evidence" must be current medical evidence, documented by a licensed physician specially trained in the field covering the participant's illness or injury, and must not have been previously considered by the Board's Benefits Committee. A member must submit any additional evidence within 45 calendar days of the notice, unless the Board has granted a 45-day extension. Subsection (f) of Rule XI(B)(3) states that the Board "shall pay for not more than two additional examinations by licensed physicians hired by the Board." Cheryl Volk, the CRS Administrative Technician who handled the audit procedures for Plaintiffs, testified that the right to obtain such additional examinations paid for by CRS lies solely with the Board, not with an appealing beneficiary. (Doc. 46, Volk Dep. at 66) According to Volk, the Board made no requests for any additional examinations by outside physicians for

-4-

any of the Plaintiffs. The Court notes that in at least one appeal, by Plaintiff Yvonne

Biggs, Dr. Hogya requested and obtained an additional psychological assessment of the

claimant. (See Doc. 45-3, at CM/ECF PAGEID 652.) After any additional medical

evidence was submitted, Dr. Hogya reviewed it and wrote a supplemental report,

recommending that each of Plaintiffs' appeals be denied. The Board agreed and voted

to terminate Plaintiffs' benefits, which constituted the final administrative decision.

## PROCEDURAL HISTORY

Following the CRS' final decision, the Kahles Plaintiffs (Regina Kahles, Ronald

Bear, Benjamin Cohee, Yvonne Biggs, Norma Ayers, and Tina Head) filed their

complaint in this Court on August 13, 2013 against the City of Cincinnati and the CRS

Board of Trustees. (Doc. 1) Defendants filed a Rule 12 motion to dismiss, which was

fully briefed and awaiting a hearing before the assigned judge (Hon. William W.

Bertelsman) when the Rechel Plaintiffs (Robert Rechel, Paul Rechtin, William Huxell,

and Norma Ragland) filed their complaint in Hamilton County Court of Common Pleas

on February 6, 2014. Defendants removed the Rechel case to this Court, and it was

assigned Case No. 14-cv-195.

Judge Bertelsman ordered the Rechel plaintiffs to attend the motion hearing that

was already set in Kahles, prepared to discuss whether the cases should be

consolidated and whether additional briefing would be needed to resolve Defendants'

motion to dismiss. (Doc. 21) In a minute order entered after the March 27, 2014 motion

hearing, Judge Bertelsman denied the motion to dismiss and set a discovery and

motions schedule, including a deadline for the Rechel plaintiffs to file a motion to

remand. (Doc. 22) No remand motion was filed, and all Plaintiffs subsequently filed a

motion to consolidate the cases, which was granted on May 1, 2014. (Doc. 28) The matter was then transferred to the docket of the undersigned. (Doc. 32)

The Third Amended Complaint of the Kahles plaintiffs includes a facial due process challenge to Section 203-55 (Count One); an as-applied due process claim (Count 2); a claim alleging an unconstitutional retroactive application of Section 203-55 (Count 3); a substantive due process claim (Count 4); a civil conspiracy claim under 42 U.S.C. §1983, alleging that Defendants conspired to deprive Plaintiffs of their protected property interest in their benefits (Count 5); and a breach of fiduciary duty claim (Count 6). (Doc. 39)

The amended verified complaint of the Rechel plaintiffs includes a mandamus claim under Ohio Rev. Code 2731.04, requesting immediate reinstatement of their benefits and payment of benefits wrongfully withheld (Count One); facial and as-applied due process claims (Counts 2 and 3); a claim of unconstitutional retroactivity (Count 4); a substantive due process claim (Count 5); claims for breach of fiduciary duty (Count 6), breach of contract (Count 7), and unjust enrichment (Count 8); a declaratory judgment claim (Count 9); and a federal and state law takings claim (Count 10). (Doc. 40)

Plaintiffs collectively seek summary judgment only with respect to their procedural due process and retroactivity claims. Defendants seek summary judgment on all of Plaintiffs' federal claims and several of the state law claims, and request that the Court decline to exercise jurisdiction over any remaining state claims.

## STANDARD OF REVIEW

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). An assertion of a undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers. The court is not duty bound to search the entire record in an effort to establish a lack of material facts. Guarino v. Brookfield Township Trs., 980 F.2d 399, 404 (6th Cir. 1992). The moving party has the initial burden of informing the court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc., 276 F.3d 845, 848 (6th Cir. 2002). Once that occurs, the party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," and must make an affirmative showing with proper evidence in order to defeat the motion. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 249-250 (citations omitted). The court must construe the record in the light most favorable to the non-movant, and draw all justifiable inferences in the non-movant's favor. United States v. Diebold Inc., 369 U.S. 654, 655 (1962).

**ANALYSIS**

-7-

Before reaching the merits of the motions, the Court addresses two preliminary issues raised in the motions.

(1) Plaintiffs have sued the City of Cincinnati and the CRS Board of Trustees. Defendants argue that the Board should be dismissed because it is not an entity that may be sued. In Ohio, a city's boards, divisions, and departments cannot sue or be sued, and the City is the proper entity that may sue on behalf of the Board. Plaintiffs do not respond to or oppose this argument. The Court agrees that the City of Cincinnati is the sole proper defendant, and the CRS Board of Trustees is therefore dismissed. (The Court will refer to the Defendants as "the City" throughout the balance of this Order.)

(2) Plaintiffs contend that the City's summary judgment motion relies on arguments that the City previously made in its initial Rule 12 motion to dismiss the Kahles complaint with respect to Plaintiffs' due process claims. Plaintiffs argue that the law of the case doctrine precludes the City from raising these arguments again in order to seek summary judgment. As noted above, the City's Rule 12(b)(6) motion to dismiss the Kahles complaint was fully briefed and argued before Judge Bertelsman. He denied the City's motion in a minute order without a written opinion. Since then, the parties have engaged in discovery, and the City asserts that its arguments on summary judgment are broader and more detailed than those previously made in the City's motion to dismiss.

The Sixth Circuit has held that the law of the case doctrine "... is directed to a court's common sense and is not an inexorable command." McKenzie v. BellSouth Telecomms., Inc., 219 F.3d 508, 513 at n.3 (6th Cir. 2000)(internal citations and quotations omitted). A Rule 12 motion is properly denied if the Plaintiffs' allegations are

-8-

"enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true."  Jones v. City of Cincinnati, 521 F.3d 555, 559 (6th Cir. 2008), citing Bell Atlantic Corp. v. Twombly, 550 U.S.544 (2007).  Judge Bertelsman entered a minute order denying the City's motion, but that order does not cite or set forth any "law of the case" that this Court must apply at this juncture.  The Court therefore rejects Plaintiffs' contention that the doctrine precludes the City's legal arguments.

Procedural Due Process

"In order to establish a procedural due process claim, a plaintiff must show that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest."  O'Neill v. Louisville/Jefferson County Metro Gov't, 662 F.3d 723, 732 (6th Cir. 2011)(internal citation omitted).  In Board of Regents v. Roth, 408 U.S. 564, 577 (1972), the Supreme Court noted that property interests entitled to due process protection "... are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  The Sixth Circuit has similarly held: "A cognizable property interest arises when plaintiffs have a legitimate claim of entitlement (or more than a unilateral expectation) to a particular benefit."  Paytel v. City of Detroit, 287 F.3d 527, 539 (6th Cir. 2002) (internal quotations and citations omitted).

Plaintiffs rely on Mathews v. Eldridge, 424 U.S. 319, 332 (1976), finding that

plaintiffs' interest in the continued receipt of Social Security disability benefits is a statutorily created property interest protected by the Due Process clause.  Plaintiffs also cite Mathews v. OPERS, Case No. 2:12-cv-1033 (S.D. Ohio, March 12, 2015 Order), where Magistrate Judge King recently concluded that disability retirement benefits granted under the Ohio Public Employees Retirement System are similarly protected. Recipients of these benefits must undergo annual evaluations to continue their eligibility. But once benefits are granted, they continue unless and until the recipient becomes ineligible under the laws governing the program.  Plaintiffs argue that these authorities demonstrate that their disability benefits are entitled to procedural due process protection.

The City argues that Plaintiffs' disability benefits are not vested under the City Code, and therefore are not entitled to procedural due process protection.  Plaintiffs need not demonstrate that their benefits are "vested" under local or state law in order to show a "legitimate entitlement" to those benefits.  Each of the Plaintiffs was injured or suffered some condition that entitled each of them to receive a disability retirement allowance under the City Code's definition of "disability."  Plaintiffs continued to receive those benefits, in some cases for many years.  The only basis upon which the Board could reduce or discontinue the benefits is defined in the Code, and is not left to the Board's unfettered discretion.  The Court finds these facts are sufficient to establish an interest in the receipt of the benefits that is protected by procedural due process.

Each Plaintiff was deprived of his or her benefits, so the only issue in dispute is whether they received adequate process.  The Supreme Court has often observed that "some form of hearing" is required before an individual can be finally deprived of a

protected interest.  Mathews v. Eldridge, 424 U.S. at 332.  But the due process standard

is a flexible one, and its protections will vary according to the facts of each specific

situation.  In Mathews, the Supreme Court considered whether a pretermination hearing

was required before federal Social Security disability benefits could be discontinued.

The Court held that no such hearing is required, and articulated three factors to balance

in determining what process is due in any particular case: (1) the private interest at

stake; (2) the risk of an erroneous deprivation and the value of any additional or

substitute procedural safeguards; and (3) the Government's interest, including the

function in question and any fiscal or administrative burdens that the proposed

additional procedures would impose.  Id., 424 U.S. at 335.

     Plaintiffs argue that the CRS audit process is constitutionally inadequate.  They

cite the Supreme Court's description of the federal disability determination process as

one that is based upon "routine, standard, and unbiased medical reports by physician

specialists."  Mathews, 424 U.S. at 344.  Plaintiffs argue that unlike the federal system,

the City's audit process requires them to undergo a physical exam by Dr. Hogya, and

not by an independent and unbiased physician.  Dr. Hogya is the CRS Medical Director,

which Plaintiffs argue creates an inevitable conflict of interest.  The City responds that

the Cincinnati Administrative Code (Article XV, Section 6) requires that the medical

director "shall be a physician not eligible to participate in the retirement system."  Dr.

Hogya testified that he is an independent physician, not employed by the City or by

CRS.  He estimated that his contract work as the Medical Director constitutes between

1% and 10% of his overall practice.  And the record demonstrates that in several

instances it was Dr. Hogya who initially recommended that Plaintiffs be granted a

disability retirement allowance, belying a suggestion that he is somehow inherently biased against the Plaintiffs.

The City cites State ex rel Cydrus v. OPERS, 127 Ohio St.3d 257 (Ohio 2010), where the Ohio Supreme Court held that the process used by OPERS to terminate disability benefits, which is virtually the same as that used by CRS, satisfied procedural due process requirements. Cydrus was a state employee who had a car accident and later developed chronic headaches; an MRI revealed a congential abnormality of her brain.  After surgery did not resolve her multiple symptoms and problems, she was granted disability retirement benefits, which she received for several years subject to annual examinations.  Eight years later, OPERS required her to be examined by a psychiatrist and a neurologist, both of whom found that she was not permanently disabled.  An OPERS physician-advisor reviewed her records and agreed, and OPERS terminated her benefits.  Cydrus appealed and submitted a new report from her own physician.  An OPERS medical advisor reviewed the new evidence and recommended that her appeal be denied, a recommendation that the Board adopted as its final decision.

Cydrus then filed a mandamus action against OPERS and raised a due process challenge.  The Ohio Supreme Court held that she received constitutionally adequate process.  The Board notified her of its initial decision; she had the opportunity to appeal and submit additional evidence; she was provided with the medical advisors' recommendations to the Board; and when her appeal was denied she challenged the decision in her mandamus action.  She argued that she was denied the right to a personal appearance before the Board, and the Board did not seek a separate physical

exam and evaluation for purposes of her appeal. The Court held that "these are insignificant distinctions." Id. at 162.

Plaintiffs attempt to distinguish the OPERS procedures from those used by CRS, noting that a number of different medical consultants were involved in Cydrus' evaluation. Plaintiffs contend that the OPERS system is therefore more "robust," which satisfies any due process concerns. The City responds that OPERS is a statewide system with a far larger membership, and the resulting need to contract with many more physicians in order to secure timely evaluations for claimants. Ohio Administrative Code 145-2-21, describing the process for OPERS disability applications, states that the OPERS Board reviews applications and the written recommendations of "its medical consultant" at regular meetings. There is no requirement that a different "medical consultant" review a claimant's application at different stages of the process or in any appeal. OPERS pays for the medical evaluations it orders, just as the City does. And it is not the OPERS medical consultant or Dr. Hogya who makes the final decision with respect to granting or terminating disability benefits. That decision is made by the Board. Paula Tilsley states in her affidavit that the Board has on occasion rejected Dr. Hogya's recommendations, and since 2008 has granted three appeals from initial denials.

Plaintiffs criticize the fact that Dr. Hogya is board certified in emergency medicine but not in occupational medicine, or in specific areas in which Plaintiffs' disabling conditions manifested. Dr. Hogya testified that since the early 1990's, disability medicine and performing disability evaluations for various entities (including the Ohio Industrial Commission and Qualified Disability Specialists) has become an increasingly

large part of his practice.  Plaintiffs do not cite any specific condition or disorder that they claim is beyond the knowledge or expertise of Dr. Hogya; and as noted above, in one of the audits Dr. Hogya obtained a psychological evaluation of the Plaintiff.  There is nothing in the record suggesting that Dr. Hogya was forbidden from seeking additional evaluations in specialty areas if he found that to be appropriate.

Plaintiffs also cite the fact that they were not afforded a hearing or permitted to cross-examine Dr. Hogya before their benefits were terminated.  But that is true for both Social Security and OPERS disability determinations.  They suggest that the CRS appeal process is constitutionally inadequate because Dr. Hogya acts as his own "appellate reviewer."  They note that he could not recall one case in which his recommendation was rejected by the Board on appeal.  Paula Tinsley, who has actual knowledge of the Board's records, avers that at least three appeals were granted by the Board in the past several years.  Moreover, Plaintiffs were free to offer any additional medical evidence for Dr. Hogya's consideration during their appeals, and they do not argue or suggest that he ignored any information that he was provided.

The City also argues that, regardless of any perceived infirmity in the pretermination process, Plaintiffs had a full and adequate post-deprivation remedy under Ohio law: a mandamus action or an administrative appeal under Ohio Rev. Code 2506.  Plaintiffs respond that post-deprivation remedies are "irrelevant" to the due process analysis, citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982), and Silberstein v. City of Dayton, 440 F.3d 306 (6th Cir. 2006).  In Silberstein, a classified civil service employee of the City of Dayton was summarily placed on administrative leave and then terminated, allegedly because she was "unwilling or unable" to serve the

Board for which she worked.  She filed a notice of appeal but was told she had no right to appeal.  The Dayton City charter states that classified employees may not be terminated unless they are given specific written reasons and an opportunity to be heard prior to any termination.  Silberstein filed a Section 1983 lawsuit, contending her procedural due process rights were violated.  The Sixth Circuit agreed with her, relying on Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 547-548 (1985).  That case held that an Ohio classified civil service employee's interest in continued employment is protected by procedural due process, which requires some form of "a pretermination opportunity to respond, coupled with post-termination administrative procedures" provided by Ohio law.

The City also argued that even if Silberstein was improperly denied any notice or opportunity to contest her termination, she had the right to pursue post-termination remedies, which she had not shown were inadequate.  The Sixth Circuit rejected this argument, because a plaintiff must demonstrate the inadequacy of a state's post-deprivation remedies (under the doctrine of Parratt v. Taylor, 451 U.S. 527 (1981)), "only where the deprivation complained of is random and unpredictable, such that the state cannot feasibly provide a predeprivation hearing."  Silberstein, 440 F.3d at 315-316.  Silberstein had been terminated pursuant to an official action of the Board for which she worked, and after it deliberated about that decision.  The act was not random or unauthorized, and therefore she did not have to prove that post-deprivation remedies were inadequate in order to succeed on her procedural due process claim.

Plaintiffs also cite Daily Servs., LLC v. Valentino, 756 F.3d 893 (6th Cir. 2014), where the Sixth Circuit recently addressed the application of the Parratt doctrine to a

procedural due process claim brought against officials of the Ohio Bureau of Workers Compensation.  The officials filed improper liens and judgments against the plaintiff, without affording him the notice and opportunity to be heard that is required by Ohio law.  The Sixth Circuit noted that in cases implicating Parratt, the dispositive question is "whether the state is responsible under the Due Process Clause for its employee's misconduct.  If an official's conduct would otherwise deprive an individual of procedural due process but is 'random and unauthorized,' the Parratt doctrine allows the state to avoid liability by providing adequate remedies after the deprivation occurs."  Id. at 901 (internal citations omitted).  The state officials' challenged actions in Valentino were both unpredictable and unauthorized, and therefore the plaintiff had to demonstrate that post-deprivation tort remedies provided by Ohio law were inadequate.  See also, DiLuzio v. Village of Yorkville, ___ F.3d ___, 2015 U.S. App. LEXIS 13720, at *20 (6th Cir., Aug. 6, 2015), holding that under Parratt, "due process does not require pre-deprivation notice-and-hearing process when the State is in no position to provide it because the deprivation was due to a defendant official's random or unauthorized act."

Here, Plaintiffs' argument that post-deprivation remedies are "irrelevant" is simply not supported by these cases.  Plaintiffs are in a similar position to that faced by Ms. Silberstein: the decision of the CRS Board to terminate their benefits was not "random or unauthorized."  It was a decision arrived at under provisions of the City Code and the Board's own Rules.  More importantly, unlike Ms. Silberstein, Plaintiffs were provided written notice of the audit and medical examination; they were able to provide their own medical records and evidence to Dr. Hogya; they were given Dr. Hogya's recommendation report along with the letter from the Board notifying them of the

termination decision; and they had the right to appeal that decision to the Board and to submit additional evidence.

The Court agrees that Plaintiffs are not **required** to prove the inadequacy of post-deprivation remedies (which they do not deny were available to them).  But that does not mean that such remedies are "irrelevant" to the question of what process is due, as Plaintiffs suggest.  Numerous cases make it clear that post-deprivation remedies are properly considered in determining what process is due in circumstances that do not involve random or unauthorized government action.  See Leary v. Daeschner, 228 F.3d 729, 743 (6th Cir. 2000)[noting that the sufficiency of predeprivation procedures must be considered together with postdeprivation procedures]; Mathews v. OPERS, supra, finding that post-termination remedy of a mandamus action was adequate to satisfy plaintiff's due process rights; State ex rel Cydrus v. OPERS, 127 Ohio St.3d at 263 [considering the availability of a mandamus remedy in rejecting plaintiff's due process challenge].  And in Loudermill, 470 U.S. at 546-547 and n. 12, where the Court recognized the existence of a protected interest in employment, the Court rejected the contention that a full evidentiary hearing was required pre-termination.  The pre-termination process should serve as "an initial check against mistaken decisions[.]"   The Court noted that this conclusion "rests in part on the provisions in Ohio law for a full post-termination hearing," and those procedures were relevant to determining "the necessary scope of pretermination procedures."

While available post-deprivation remedies are not dispositive of Plaintiffs' due process claims, consideration of their availability is entirely proper in considering the adequacy of the pre-termination process Plaintiffs received.  Plaintiffs do not contend

-17-

that those remedies are insufficient or unavailable.  The City notes that at least one disability retiree whose benefits were terminated chose to pursue an administrative appeal in the state courts (<u>Young v. City of Cincinnati</u>, Appeal No. C-140362, Ohio First District Court of Appeals (unpublished order), Doc. 50, Ex. I).  A petition for a writ of mandamus is another avenue for post-termination appeal, and will be granted if it is shown that the Board abused its discretion in terminating benefits.  See, e.g., <u>Ohio ex rel. Cornely v. OPERS</u>, 2013-Ohio-4205 (Ohio 10th Dist. App. 2013), granting a writ to plaintiff-relator challenging the termination of her OPERS disability retirement benefits.

Considering the <u>Mathews v. Eldridge</u> factors in light of the parties' arguments, the Court concludes that Plaintiffs' procedural due process rights were not violated.  Plaintiffs undoubtedly have an interest in the continuation of disability benefits that was affected by the decision.  There is always some risk of error in any review process used to make such determinations, but Plaintiffs do not explain the **probable** value that additional safeguards would offer.  They do not argue that a pre-termination evidentiary hearing is required, but they suggest that more medical opinions from additional Board consultants may result in a more reliable outcome.  Plaintiffs were free to submit any medical records, reports or opinions about their conditions and disabilities during the audit process.  It is simply speculative to suggest that if Board paid for a second or third medical consultant reviewer, the outcome would always be more reliable.  In <u>Leary v. Daeschner</u>, 228 F.3d at 744, the court noted that predeprivation hearings serve as an "initial check" on an employer's decision; they "need not definitively resolve the propriety of the action."

The third <u>Mathews</u> factor to consider is the government's interest.  The City

-18-

argues that imposing additional procedural requirements, by requiring individual hearings or adding more layers of evaluations, would unduly burden the CRS, which administers retirement accounts for some 4,400 active employees and 3,000 retirees with a staff of ten employees.  Plaintiffs respond that the City misconstrues their arguments.  They do not merely seek a hearing, but a restructuring of the entire process, including the retention of "independent" medical consultants, separate appellate procedures and reviews, and a reversal of the Board's decision regarding their continuing eligibility under the 2013 amended version of Section 203-55.  The Court has rejected their contention that Dr. Hogya is biased or lacks independence because he is the Medical Director.  Plaintiffs have not cited any specific case in which Dr. Hogya's written reports, either initially or on appeal, demonstrates bias or a failure to review all of the evidence submitted to him.  They plainly do not agree with Dr. Hogya's conclusions and recommendations, but disagreement is not sufficient to sustain their claims.  And as will be discussed below, the Court concludes that the City did not violate Plaintiffs' rights by reviewing their continuing eligibility under amended Section 203-55.  Plaintiffs' as-applied due process claims lack merit.

The City also seeks judgment on Plaintiffs' facial due process challenge to Section 203-55 and the audit procedures.  A facial challenge requires Plaintiffs to show that under no set of circumstances would the Code be valid. The City reiterates that due process does not require a pre-deprivation evidentiary hearing and that Plaintiffs had adequate post-deprivation remedies, showing that a facial challenge to Section 203-55 is meritless.  Plaintiffs rely on the same arguments supporting their as-applied challenge.  The Court concludes that Plaintiffs have not established that Section 203-

55, either facially or as applied to each of them, violated their procedural due process

rights.  The City is therefore entitled to summary judgment on these claims.

Substantive Due Process

    The City seeks summary judgment on Plaintiffs' substantive due process claim,

arguing that the asserted interest in disability retirement benefits is not protected by the

substantive due process clause.  As explained by the Sixth Circuit, "... citizens have a

substantive due process right not to be subjected to arbitrary or irrational [governmental]

decisions."  Pearson v. City of Grand Blanc, 961 F.2d 1211, 1217 (6th Cir. 1992)

(concerning local zoning regulations).  However,

> [t]he interests protected by substantive due process are of
> course much narrower than those protected by procedural
> due process. Most property interests warranting the
> protection of procedural due process, for instance, may be
> substantively modified or abolished by the legislature. ...
> Interests protected by substantive due process, which the
> legislature may not infringe unless supported by sufficiently
> important state interests, include those protected by specific
> constitutional guarantees, such as the Equal Protection
> Clause, freedom from government actions that shock the
> conscience, ...  and certain interests that the Supreme Court
> has found so rooted in the traditions and conscience of our
> people as to be fundamental.

Bell v. Ohio State Univ, 351 F.3d 240, 249-250 (6th Cir. 2003) (internal citations and

quotations omitted).  To succeed on their claims, Plaintiffs must demonstrate both a

fundamental interest and a deprivation of that interest by arbitrary and capricious state

action, in the "conscience shocking constitutional sense."  Bowers v. City of Flint, 325

F.3d 758, 763 (6th Cir. 2003), finding no substantive due process violation in the city's

failure to grant a five percent discount on timely-paid water bills as provided by local

ordinance.  See also Charles v. Baesler, 910 F.2d 1349 (6th Cir. 1990), rejecting a

fireman's substantive due process claim arising from the failure to promote him as required by local law; and Sutton v. Cleveland Bd. Of Educ., 958 F.2d 1339 (6th Cir. 1992), finding that a public employee's right to continued employment was not protected by the substantive due process clause.

The City argues that even if Plaintiffs' interest in their disability allowance is protected for purposes of procedural due process, the cessation of those benefits does not implicate a fundamental right.  Nor does the Board's decision to terminate their benefits involve "conscience shocking" conduct.  Those decisions were made based on medical examinations and records, and Dr. Hogya's recommendations.  Plaintiffs do not directly respond to these arguments, and the cases cited above strongly support a conclusion that Plaintiffs' interest in their disability allowance is not protected by substantive due process.  Moreover, the record does not reflect that those decisions fall within the realm of "conscience shocking" governmental conduct.  The Court finds that the City is entitled to summary judgment on Plaintiffs' substantive due process claims.

<u>Retroactive Application of Code Section 203-55</u>

Plaintiffs' complaints include a separate claim that the Board's application of the amended 2013 version of City Code Section 203-55 is unconstitutional, and that it violates Article 28, Section II of the Ohio constitution.  Article 28 states that the Ohio legislature "shall have no power to pass retroactive laws, or laws impairing the obligation of contracts ...".  This principle is rooted in English common law, and federal and state laws uniformly prohibit retroactive statutes.  The Ohio Supreme Court has explained: "Every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new

disability, in respect to transactions or considerations already past, must be deemed retrospective or retroactive." Van Fossen v. Babcock & Wilcox Co., 36 Ohio St.3d 100, 106 (Ohio 1988).  In that case, the court held that a statute amending the definition of an employer intentional tort (requiring evidence of a "deliberate intent" to injure, replacing the prior standard that did not require proof of specific intent) could not be applied to a case pending on appeal when the statute took effect.  Retroactive application would eliminate the employee's "viable, court-enunciated cause of action by imposing a new, more difficult statutory restriction upon [plaintiff's] ability to bring the instant action." Id. at 109.

Here, Plaintiffs contend that the City could not evaluate their continuing eligibility for benefits under the 2013 amended version of Section 203-55, because it amounted to a retroactive application of the ordinance.  They cite Landgraf v. USI Film Products, 511 U.S. 244, 265 (1994), where the plaintiff argued that the 1991 Title VII amendments (granting a right to recover compensatory damages and to a jury trial) should apply to her case, which was pending on appeal when the amendment took effect.  The Supreme Court rejected her argument that she was entitled to another trial before a jury: "The presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." Id. at 265.  The Supreme Court noted that plaintiff had already received a trial, and that both the trial and the underlying conduct occurred long before the Title VII amendments took effect.

Landgraf and VanFossen are distinguishable from Plaintiffs' situation.  In both cases, the courts held that statutory amendments that expanded remedies available for past conduct (Landgraf) or made proof of harm caused by past conduct more difficult (VanFossen) could not constitutionally be applied retroactively.  Here, amended Section 203-55 does not operate retroactively: it does not disturb the Plaintiffs' original entitlement to benefits.  Nor does the amendment alter the Code's definition of disability. The City is not seeking to recoup payments Plaintiffs have previously received. Plaintiffs were always subject to regular audits by the Board to review their status and continuing eligibility. The 2013 amendment changed the basis upon which any CRS participant remains eligible to receive those benefits, but operates on a prospective, not retroactive basis.

The Court believes that this case is more aptly analogized to Martin v. Hadix, 527 U.S. 343 (1999).  The Martin plaintiffs were prevailing parties in Section 1983 prison litigation against Michigan officials; pursuant to a consent decree, plaintiffs were awarded attorney's fees for post-judgment monitoring of defendants' compliance with that decree.  The district court established a procedure to review fee applications and award fees semi-annually at the prevailing local market rate.  This system continued for many years.  Congress passed the Prison Litigation Reform Act on April 26,1996, which limited the hourly rate for fee awards in prison litigation.  Plaintiffs submitted a fee petition for a six-month period spanning the PLRA's effective date, and the district court applied the new fee cap only to work performed after that effective date.  The Sixth Circuit reversed, concluding that the PLRA did not apply at all to cases pending on its effective date, because that would have an impermissible retroactive effect on fees

awarded for work already performed.  The Supreme Court reversed and reinstated the

district court's conclusion.  The Court rejected the plaintiff's argument that long before

the PLRA, they had a court-approved agreement to be compensated for their services

at a specific market rate, and they continued to render services in reliance on that

agreement.  They argued that applying the PLRA's reduced rates would impermissibly

"attach new legal consequences" to their already completed work.  The Court concluded

there was no impermissible retroactive effect caused by applying PLRA's fee caps to all

work performed after the statute's effective date.

Another case that the Court finds relevant to this question is State ex rel Richard

v. Board of Trustees, 69 Ohio St.3d 409 (Ohio 1994), in which a local Ohio city police

officer was injured and granted maximum partial disability retirement benefits.  The

police pension fund informed him at that time that if his condition deteriorated, and he

became unfit for any employment, he could apply to increase his benefits from partial to

total.  Eight years later he applied for total disability but was told that current state law

did not allow him to do so.  After exhausting his administrative remedies, he filed a

mandamus action to compel the pension fund to consider his total disability application.

The Ohio court of appeals granted him relief, but the Ohio Supreme Court reversed.

Plaintiff argued that applying the new law retroactively to him would deprive him of his

vested interest in an award of permanent disability.  The court disagreed, noting that a

subsequent enactment "will not burden a past transaction or consideration in the

constitutional sense, unless the past transaction or consideration created, if not a

vested right, at least a reasonable expectation of finality. ... Maximum partial disability

beneficiaries such as [plaintiff] have no reasonable expectation that their right to apply

for different benefits would never be terminated by subsequent changes in the applicable law.  To hold otherwise would mean that the General Assembly would never be able to limit some benefits in order to retain the solvency of financially strapped disability or retirement funds."  Id. at 1296 (internal citations omitted).

The Court reaches the same conclusion here.  Plaintiffs were always subject to regular audits to determine their continued eligibility; while CRS apparently neglected to conduct audits for some period of time, the law in effect when Plaintiffs were awarded benefits clearly gave notice that those benefits were subject to reduction or termination. The Court concludes that Plaintiffs have not established a reasonable expectation that the basis for their continued eligibility would never be changed or amended by subsequent ordinances.  The City is entitled to summary judgment on Plaintiffs' claims that the application of amended Section 203-55 is an unconstitutional retroactive legislative enactment.

Other Claims Raised by Plaintiffs

The Rechel plaintiffs assert a takings claim under federal and state law.  They do not seek summary judgment on this claim.  The City's motion seeks judgment on the claims because Plaintiffs' disability benefits are not the sort of vested private property right for which the Fifth Amendment requires just compensation, and because Plaintiffs failed to exhaust state remedies.

Regarding the first issue, the City cites Gamel v. City of Cincinnati, 2012-Ohio-5152, 983 N.E.2d 375 (Ohio Ct. App. 2012), in which retired Cincinnati employees challenged a 2009 City ordinance that reduced their healthcare benefits.  The Ohio court of appeals concluded that Section 203 of the Cincinnati Code reflected  the City's

intent "that a member of the retirement system had a vested right in only the retirement allowance" granted under Section 203-33. Id. at *P9. Disability benefits are not part of the retirement benefits under that section; and the City argues that without a vested property right, there was no compensable taking. The City also cites State ex rel Horvath v. State Teachers Retirement Bd., 83 Ohio St.3d 67 (Ohio 1998), a lawsuit brought by the surviving spouse of an Ohio teacher who died before she was eligible to draw a retirement pension from STRS. Her STRS contributions had been refunded, but her spouse challenged a state statute prohibiting the payment of interest on those refunded contributions. In rejecting the plaintiff's takings claim, the Ohio Supreme Court found that mandatory contributions to STRS "... result from economic legislation designed to benefit retired and disabled public school teachers and their survivors and beneficiaries and, when placed in the fund, lose their character as private property. ... Grants made from STRS funds, including refunds ... constitute statutory benefits. ... Accordingly, the nature and extent of a contributor's protected property rights in the STRS are determined solely by the statutes that govern the system." Id., 83 Ohio St.3d at 73-74. Those governing statutes did not create or confer a right to accrued interest on contributions if the participant died before reaching retirement age.

Here, the City contends that whatever interest Plaintiffs have in their disability benefits is not the sort of vested, private property interest that demands just compensation under the Fifth Amendment. Plaintiffs do not directly respond to this contention, but rely on the arguments supporting their due process claims. The Court's conclusion that Plaintiffs had a "legitimate expectation" to their benefits that triggered procedural due process protection does not require a conclusion that those benefits are

private property that may not be "taken" by the legislative enactments governing CRS without "just compensation."  The Court notes that the Supreme Court has observed that a compensable "taking" is more readily found when there is a physical invasion of property by the government (a "per se" taking), rather than a situation "when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good."  Penn Cent. Transp. v. New York City, 438 U.S. 104, 124 (1978).  Plaintiffs cite no case holding that statutory benefits such as their disability allowance are protected by the takings clause of the Fifth Amendment, and the Court concludes that they are not.

With regard to the City's second argument, that they failed to exhaust state remedies, the Rechel Plaintiffs note that they filed their complaint in state court and alleged a mandamus claim.  The City removed the case, and thereby waived any exhaustion argument.  Plaintiffs cite Sansotta v. Town of Nags Head, 724 F.3d 533 (4th Cir. 2013), where plaintiffs filed a state court complaint alleging federal and state claims after the town declared their seaside cottages a nuisance following a major storm.  The town removed the case and at summary judgment argued that the takings claim was not ripe because plaintiffs failed to exhaust state remedies.  The district court granted the town judgment on most of the federal claims, held that the takings claim was unripe, and dismissed the state law inverse condemnation claims without prejudice under 28 U.S.C. § 1367.  On appeal, the Fourth Circuit held that the town waived its exhaustion argument by removing the case to federal court, and remanded the case to the district court for further consideration.

Because Plaintiffs' federal takings claim fails on its merits, their arguments on

waiver of the exhaustion issue are moot as they pertain to their federal claim.  Neither party has argued that there is a difference between federal and Ohio takings law.  However, the Court notes that in McCarthy v. City of Cleveland, 626 F.3d 280 (6th Cir. 2010), the Sixth Circuit concluded that Ohio law interpreting the analogous Ohio constitutional provision to that of the Fifth Amendment's takings clause affords greater protection to plaintiffs than does federal law.  In that case, the district court had granted summary judgment on plaintiffs' federal and state takings claims without separately addressing Ohio law. The Sixth Circuit affirmed the judgment on the federal claims, but remanded the case to the district court for consideration of whether to exercise jurisdiction over or to remand the state law claim.

With respect to their other state law claims, Plaintiffs do not oppose the dismissal of their civil conspiracy, breach of fiduciary duty, and unjust enrichment claims.  The City seeks summary judgment on the Rechel Plaintiffs breach of contract claim, which Plaintiffs oppose.  Neither party has addressed the merits of the Rechel Plaintiffs' claims for mandamus and for a declaratory judgment.

28 U.S.C. §1367(c) grants the district court discretion to decline to exercise supplemental jurisdiction over a state law claim when the claim raises novel or complex state law issues, or the court has dismissed the federal claims over which it has original jurisdiction, or if exceptional circumstances exist.  The Court has dismissed all of Plaintiffs' federal claims, and concludes that the Rechel Plaintiffs' remaining state law claims raise issues that the state courts are far better equipped to address and resolve.  The remaining state law claims of the Rechel Plaintiffs are therefore remanded to the Hamilton County Court of Common Pleas.

**CONCLUSION**

For all the foregoing reasons, the City's motion for summary judgment is granted with respect to all Plaintiffs' facial and as-applied procedural due process, substantive due process, and retroactivity claims, and on the Rechel Plaintiffs' federal takings claims. Plaintiffs have waived their claims for civil conspiracy, unjust enrichment and breach of fiduciary duty, and those claims are dismissed with prejudice. As this disposes of all claims raised by the Kahles Plaintiffs, the Court therefore grants the City's motion for summary judgment in its entirety with respect to the Kahles Plaintiffs, and their complaint is dismissed with prejudice.

The Court declines to exercise supplemental jurisdiction over the remaining state law claims alleged by Rechel Plaintiffs. Their claims for breach of contract, mandamus, declaratory judgment, and a takings claim under Article I, Section 19 of the Ohio constitution, are therefore remanded to the Hamilton County, Ohio Court of Common Pleas.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: August 25, 2015                    s/Sandra S. Beckwith
                                          Sandra S. Beckwith, Senior Judge
                                          United States District Court